108 So.2d 614 (1959)
CITY OF MIAMI BEACH, Florida, a municipality created and existing under the Laws of the State of Florida; Kenneth Oka, as Mayor and Councilman; Harold Spaet, Marcie Lieberman, Bernard Frank, Melvin Richard, D. Lee Powell and Harold Shapiro, as and constituting the City Council of the City of Miami Beach, Florida; O.M. Pushkin, as Chief Building Inspector of the City of Miami Beach, Florida, Appellants,
v.
STATE of Florida ex rel. FONTAINEBLEAU HOTEL CORP., a Florida corporation, Appellee.
No. 58-715.
District Court of Appeal of Florida. Third District.
January 29, 1959.
Rehearing Denied February 23, 1959.
On Motion to Vacate Stay of Mandate Denied March 4, 1959.
Sibley, Grusmark, Barkdull & King, Miami Beach, for petitioners.
Ward & Ward, Miami, Joseph A. Wanick, Miami Beach, and Ben Shepard, Miami, for respondents.
*615 Hoffman, Kemper & Johnson, Miami, amicus curiae.
On Motion to Vacate Stay of Mandate Denied March 4, 1959. See 109 So.2d 204.
PEARSON, Judge.
This is an appeal from a final judgment granting a peremptory writ of mandamus directing the appellants, respondents below, to issue a building permit to the appellee, petitioner below.
Petitioner's statement of its case for mandatory relief is as follows: It is the owner of a twelve-acre tract on Miami Beach, Florida, which is bounded on the east by the Atlantic Ocean, on the north by the Eden Roc Hotel property, and on the west and a part of the south by public streets. There is a large hotel situated upon the petitioner's property, and it was determined that 400 additional hotel rooms would be added to the present structure by building a fourteen-story building on the north side of its property, which was to be connected to the present hotel by a ballroom and lobby. Plans for this addition were submitted to the chief building inspector of the respondents for his approval and the issuance of a construction permit. These initial plans were rejected because the stairway of the building would project into the 20-foot setback or sideyard required by the then existing zoning regulation, upon the north side of the said property. However, a permit was issued allowing petitioner to commence construction of the first three floors of the contemplated fourteen-story building. Subsequently on October 6, 1958, the petitioner resubmitted its plans for approval having corrected the objection of a stairway projecting into the setback area. The amended plans were rejected as not complying with ordinance No. 1312, passed as an emergency amendment to the Building Code by respondents on October 1, 1958. The pertinent part of this ordinance reads as follows:
"Provided, however, that on lots fronting on the ocean no building shall be erected to a height in excess of thirty (30) feet, except that for each foot of the total number of feet that the building sets back from the ocean and/or sets back from the northerly property line, one-half (1/2) foot may be added to the height limit specified, not exceeding, however, the maximum height herein specified."
The petitioner further alleged that the effect of the said ordinance is to require the petitioner to set back from the ocean 190 feet "on the north or Eden Roc side of its property line, although no such setback is required for construction on the south side of its property line." On October 29, 1958, prior to the filing of the petition for mandamus but subsequent to the submission of plans on October 6, 1958, which plans admittedly cured the defect as to setback except for the provisions of the emergency ordinance of October 1, 1958, the City Council of Miami Beach, adopted another emergency ordinance, namely No. 1321. The second ordinance was substantially the same as ordinance No. 1312 except for certain details not important to this cause.[1] Since the question involved is the clear legal right of the petitioner to a building permit October 6, 1958 we need not further consider ordinance No. 1321 passed October 29, 1958. However, this latter ordinance is subject to the infirmities claimed to invalidate ordinance No. 1312 passed October 6, 1958, and it is mentioned so that it may be clear that this opinion covers the validity of both ordinances.
*616 Petitioner alleges that the ordinance is a zoning ordinance, and that in order to be valid it must be enacted in accordance with the terms and provisions of the Miami Beach Zoning Enabling Act, Chapter 9837, Special Acts of 1923, which act the petitioner contends gives the city the power and authority to provide setbacks, yards, and open spaces. Further the act requires that only after notice and public hearing may a zoning regulation be adopted, and neither was notice given nor was a public meeting had. Therefore, the petitioner contends the ordinance is a nullity making the refusal of the respondents to issue the permit unjustifiable and unlawful. Thus petitioner concludes the court should compel the respondents to issue the permit.
The respondents in their return answered that under the general police powers given to them in the city charter, they have the right to regulate and restrict the height, number of stories, size of buildings and other structures, the percent of lot that may be occupied, the size of the yards, courts and other open spaces. They contend that the primary purpose in requiring an additional setback for construction above the 30-foot level is to "prevent the cutting off of light and air or the interfering with the view to the ocean" of property to the north. They further contend this inherent power to enact building code ordinances which control the nature of the construction of buildings is found in section 6, subd. (t) of the Charter of the City of Miami Beach, Special Act of the Legislature of Florida 1923, No. 9836, as amended by Chapter 10845, Special Acts of 1925, Chapter 13101, Special Acts of 1927, Chapter 16562, Special Acts of 1933, and Chapter 17608, Special Acts of 1935, which in addition to the other powers granted, gives these powers to the city:
"To adopt ordinances establishing fire limits or zones and to provide when and under what conditions structures for habitation, commercial or other uses may be constructed and maintained within or without such zone or zones, and the elevation, character and size of material or things which may be used in such structures, and provide for the construction of different classes in such manner as to provide for the safety of persons in, on or about the same, the ventilation thereof, and the admission of natural light therein."
Section 6, subd. (x) also empowers the city
"to adopt all ordinances and do all things deemed necessary or expedient for promoting or maintaining the general welfare."
In addition to the general powers under their charter the respondents also urge that sections 176.01-.03 Fla. Stat., F.S.A.,[2] "especially" *617 grants them a "general specific power" to set the standards for the size and shape of buildings.
The court granted the peremptory writ holding in part that emergency ordinances No. 1312 and No. 1321 were in fact an exercise of powers granted the City by the Zoning Enabling Act, Chapter 176, Fla. Stat., F.S.A., and that the city had failed to exercise the power to adopt such ordinances in the manner prescribed.[3] It will be noted the petitioner claimed the invalidity of the ordinances upon the failure of the city to comply with the notice provisions of the Miami Beach Zoning Enabling Act, Chapter 9837, Special Acts of 1923 and that the trial court based its decision upon the failure of the city to comply with the notice provision of the Zoning Enabling Act, section 176.01 et seq., Fla. Stat., F.S.A. But this distinction is of no importance since both acts require notice and public hearing upon zoning ordinances and no notice or hearing was had upon the ordinances in question.
The appellant, city, in its brief raises two questions: (1) Does mandamus lie under the circumstances outlined? (2) Does the City of Miami Beach under its general charter powers have the right to pass the questioned ordinance as an amendment to its building code? The appellee suggests that the second question actually has two aspects: (1) Is an ordinance which requires a setback at ground level from a property line a zoning ordinance? (2) Is the ordinance invalid as an unreasonable use of the police power? In view of our holding that the final judgment must be substantially affirmed upon the points raised by the appellant, the additional argumens advanced as to the validity of the ordinance, by the appellee need not be considered.
It is well recognized in this state that for mandamus to issue the relator's right must be clear. City of Miami Beach v. State ex rel. Epicure, Inc., 148 Fla. 255, 4 So.2d 116, and cases cited therein; State ex rel. Bigler v. City of Miami, Fla. 1949, 40 So.2d 207. However, it has been held that mandamus is an appropriate remedy to require the issuance of a permit where an ordinance designed to prohibit its issuance appears invalid on its face. State ex rel. Shad v. Fowler, 90 Fla. 155, 105 So. 733; City of Miami Beach v. State ex rel. Lear, 128 Fla. 750, 175 So. 537. The appellant relies upon City of Coral Gables v. State, Fla. 1950, 44 So.2d 298, 301, as overruling the holding in the cases cited, but we find the following statement in the Coral Gables case:
"For example, if, upon an examination of the ordinance and the charter of the City of Coral Gables, it should appear that the charter of the city and the applicable general law did not permit or authorize the enactment of Ordinance No. 271, then the ordinance on *618 its face would appear invalid and the issuance of the desired permit may be controlled in an appropriate action of mandamus."
In the consideration of appellants' contention that the emergency ordinance has a valid basis upon the city's authority to enact building code ordinances, it is necessary to consider the city's contention that the ordinance in question provided only for "recessed construction above the third floor" and therefore, "do not in any way affect the zoning requirements as far as setback from the north and south lines or setbacks from Collins Avenue are concerned."[4]
The plain words of the ordinance, above quoted, refer to "building setbacks." The measurement involved is in each case from the "property line" to the building. It is to be presumed that the measurement would be at ground level since no other measurement is provided. If the city intended to pass an ordinance providing that the outside wall of each floor must be recessed from the outside wall of the floors below a certain minimum distance, then the result was not accomplished. We therefore conclude that the trial judge correctly determined that the ordinance provided for a setback of the building.
The Supreme Court of Florida in Wyeth v. Whitman, 72 Fla. 40, 72 So. 472, 473, held that the authority granted to a city by statute "to prescribe rules and regulations for the erection and repair of buildings" was not a sufficient basis for an ordinance establishing a setback. See also McQuillin, Municipal Corporations, Third Edition, section 24.541, citing City of Miami v. Romer, Fla. 1952, 58 So.2d 849. Setbacks have been held a reasonable use of the power to zone. Mayer v. Dade County, Fla. 1955, 82 So.2d 513. In the instant case the city had a specific authority to prescribe setbacks under the Zoning Enabling Act of the City of Miami Beach, Chapter 9837, Laws of Florida 1923. Under these conditions, the authority to so materially limit the use of property ought not be inferred under another general grant of authority found in the charter. This is especially true when the specific grant of authority from the legislature contains limitations *619 on the use of that authority designed to protect the public from a hasty or ill advised use of the authority. We therefore hold that ordinance No. 1312 passed as an emergency measure without notice or public hearing, as required for all zoning ordinances, is invalid. City of Hollywood v. Rix, Fla. 1951, 52 So.2d 135; Town of Hillsboro Beach v. Weaver, Fla. 1955, 77 So.2d 463. Therefore this ordinance could not operate to deprive the appellee of the right to a building permit if appellee otherwise complied with the provisions of the applicable statutes and ordinances.
In the order denying the respondent city's motion to quash the alternative writ of mandamus, the trial court held that the ordinance relied on was invalid because authority for enactment of such a setback ordinance lay in the zoning power and not under the building code. After having thus eliminated the challenged ordinance (which the city had set up as a basis for refusal to issue the building permit), it was not necessary or appropriate to rule on the reasonableness or otherwise of such a (zoning) regulation. However, the trial court ruled that such an ordinance would be "arbitrary and unreasonable and have no relationship to the public safety, health, morals, comfort or general welfare." In the final judgment the trial court appeared to adopt by reference those rulings contained in the earlier order on motion to quash. The judgment is modified by eliminating therefrom the ruling of the trial court to the effect that such an ordinance is or would be arbitrary and unreasonable. It will be time enough to pass on the question of validity of the attempted regulation when and if a zoning ordinance so providing is enacted, otherwise the question is being prejudged to the possible detriment of interested owners of other parts of the area or undeveloped strip which would be affected thereby. See State ex rel. Helseth v. Du Bose, 99 Fla. 812, 128 So. 4, at page 6.
The city admitted in its answer to the alternative writ that the permit was not issued to the petitioner on October 6, 1958, because of ordinance No. 1312. However, it is pointed out in the briefs filed, that the petition for alternative writ failed to attach the plans which were tendered in connection with the application for building permit on October 6, 1958. We find this objection well taken, for it must be determined by the trial court that the plans upon which the permit is now to issue are the plans under which the petitioner was entitled to a permit on October 6, 1958. In addition the writ should be amended to provide for the issuance of a building permit at such time as the petitioner otherwise qualifies therefor by meeting the conditions ordinarily and legally imposed.
The judgment is affirmed in part, reversed in part, modified and remanded for further proceedings.
CARROLL, CHAS., C.J., and HORTON, J., concur.
NOTES
[1] The comparable provisions of ordinance No. 1321 are as follows: "Provided, however, that on all lots fronting on the ocean, no building shall be erected to a height in excess of thirty (30) feet, except that for each foot of the combined total number of feet that the building sets back from the established bulkhead line and from the northerly property line of such lot, or from the northerly line of any public street or way which abuts on the northerly property line of such lot, one-half (1/2) foot may be added to the thirty (30) foot height limit herein specified, provided, however, that the maximum height hereinabove established shall not be exceeded."
[2] "176.01 Definitions. Wherever the term `municipality' is used in this chapter, it shall mean all cities and towns in the State of Florida. Wherever the term `governing body' is used in this chapter, it shall mean the city or town commission, council, board of aldermen, or other governing bodies of any form whatsoever by whatsoever name known.

"176.02 Municipalities may regulate building, density of population, and the location and use of buildings, structures and land and water. For the purpose of promoting health, safety, morals, or the general welfare of the communities and municipalities of the State of Florida, said municipalities may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other spaces, the density of population, and the location and use of buildings, structures, the land and water for trade, industry, residence or other purposes.
"Wherever the governing body of any municipality shall elect to exercise any of the powers granted to it under this chapter, said powers shall be exercised in the manner hereinafter prescribed and in accordance with the charter of such municipality.
"176.03 Division of municipality into districts for purposes of regulation. For any and all said purposes the governing body may divide the corporate area of the said municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this chapter; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts."
[3] Section 176.05 Fla. Stat., F.S.A. "Municipality to provide procedure; regulation, restriction or boundary not effective until after public hearing thereon; publication of notice of hearing required.  The governing body of the said municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in a newspaper of general circulation in said municipality and if there be no newspaper published within the municipality then three notices shall be published in at least three conspicuous places within the municipality including the city or town hall as the case may be."
[4] Answer of Respondents to Alternative Writ. Par. No. II.

"(j) The City of Miami Beach for many years in the past had permitted the erection of buildings from 43rd Street south without taking due consideration to the necessities for light, air and reflection of sunshine and the general appearance of the hotels and apartments along the Ocean front, which has resulted in unfavorable conditions. In order to avoid the continuation of such unorderly type of construction and to prevent the continued building of large structures which by their very nature would cast undue shadows upon the property to the north, the City Council of the City of Miami Beach, acting through its general police powers and under the statutes above mentioned, and for the purpose of keeping the buildings above the 30-foot elevation recessed in some manner, and to add to the attractiveness and the comfort of all of the new buildings and their occupants, adopted the ordinances in question which do not in any way affect the zoning ordinance requirements as far as setback from the north or south lines or set-backs from Collins Avenue are concerned.
"(k) The sole purpose in maintaining the building code ordinances has been for the purpose of affording to each of the new structures as they may be built on this entire area which has been designated as a new district, the requirements that above the 30-foot level the buildings shall be set back under the formula adopted either by additional recessed construction above the third floor on the north or corresponding recessed construction from the east along the Ocean front, or a combination of the formula with some recess on the north side and some recess on the east side. By reason of the application of the formula as adopted, the City will secure a greater distance between these structures above the third floor areas, which said restriction will apply equally to all buildings to be constructed in that district, and will prevent the cutting off of light and air or the interfering with the view to the Ocean of the structures which are permitted to be built to a height of 160 feet."