Argued June 18, affirmed September 10, 1970

RUST ET AL, *Appellants, v.* CITY OF
EUGENE, *Respondent.*

474 P2d 374

*Henry J. Camarot,* Springfield, argued the cause and filed the briefs for appellants.

*Herman P. Hendershott,* City Attorney, Eugene, argued the cause for respondent. With him on the brief was James W. Spickerman, Assistant City Attorney, Eugene.

Before Schwab, Chief Judge, and Foley and Branchfield, Judges.

FOLEY, J.

This is a zoning case. After a determination by the Eugene City Council denying their request for zoning change, petitioners applied to the Lane County Circuit Court for a writ of review. From an adverse determination there, petitioners appealed to this court.

Petitioners are (1) the current owners of the property in question, and (2) the individuals who hold an option to purchase the property. The property is located in an area which can properly be characterized as partly commercial and partly multiple residential at the intersection of two well travelled main thoroughfares. The property involved approximates 92,000 square feet of land, and is located at the southwest corner of Coburg Road and Cal Young Road in the City of Eugene. The property is rectangular in shape. The request for rezoning divides this property, currently zoned RA (single family outer residential district), into two tracts. One tract, measuring 125' by 140', is located at the corner closest to the intersection, and has the home of the petitioners Rust located thereon. The petition seeks rezoning of this tract to C-2 (neighborhood commercial district). The petitioners seek a rezoning to R-3G (garden apart-

ment residential district) for the remainder of the property.

On January 2, 1968, an application for rezoning was considered by the City of Eugene Planning Commission, and that commission recommended that petitioners' application be denied. On January 22, 1968, the matter was considered by the Eugene City Council, and on April 8, 1968, the council unanimously recommended that the entire property be rezoned R-3G (garden apartment residential district). This matter was then referred back to the Planning Commission for concurrence or other recommendation. On April 29, 1968, at a joint meeting of the Eugene City Council and the Planning Commission, it was jointly recommended that the entire parcel be rezoned to R-2 (limited multiple family residential). On May 27, 1968, the entire property was so rezoned by the passage of Ordinance No. 15311.

The zoning R-2 would, under the city's general zoning ordinance, allow the construction of 34 multiple living units on the entire property involved here, based on one unit per 2,650 square feet. In contrast, petitioners' requested zoning plan would permit a gas station or branch bank on the smaller tract and 60-65 multiple living structures on the remainder.

On May 8, 1967, pursuant to recommendation of the Eugene Planning Commission, the Common Council of the City of Eugene, through Resolution No. 1418, adopted the Willakenzie Interim Land Use Plan. This plan updated the 1959 Development Plan for the Willakenzie Planning Area. The policy adopted pursuant to this resolution was, in part, as follows:

"4. the Commission will look favorably upon applications for low density multiple family hous-

ing when they occur along arterials that would serve as buffers for commercial and residential areas."

The position of the city as developed from the record is simply that an R-2 rezoning of the property fits into the area's over-all scheme of land development in two ways: (1) the multiple living unit is consistent with the noncommercially zoned development in the area, and (2) the construction of multiple living units in that area affords a logical buffer zone between the single family residential zone and the commercial zone.

■ The zoning change made in the case at bar did not constitute "spot" zoning; rather, it was the type of change contemplated in the updating of the land use plan. It was therefore a change in compliance with, not in deviation from, the plan. The case of *Archdiocese of Port. v. Co. of Wash.*, 254 Or 77, 458 P2d 682 (1969), sets forth the function of the court in reviewing the action of the city council under such circumstances.① The court said:

> "* * * [T]he only function of this court and the trial court in reviewing the action of the Board of County Commissioners is to decide whether the Board acted arbitrarily or capriciously. It is not our function to weigh the evidence for the purpose of determining whether in our judgment the Board correctly decided that the use sought would result in a detriment to the community as a whole. It is

---

① In the *Archdiocese* case the plaintiff had applied for and been denied a conditional use permit to build a church, school and gymnasium facility in an area zoned for residential purposes. Although the present case does not involve conditional uses, this difference is not relevant to the legal question. In both cases the city had adopted an over-all area plan, and the uses involved were within the contemplation of that plan.

possible, as plaintiff contends, that the Board erred in concluding that the proposed use would cause traffic congestion or a fire hazard or other harm to the citizens in that area of the county. But the members of the Board, as representatives of the people who elected them, have the privilege of erring in making their decisions as long as they abide by the required procedures and their conclusion is not patently irrational. We examine the record of the proceedings before the Board only to determine whether those proceedings were fairly conducted in accordance with the requirements of the ordinance and that there was a rational basis for the Board's decision. * * *" 254 Or at 85-86.

■■ The question presented in the present case is not whether the change requested by petitioners is within the contemplation of the zoning plan, but whether the City of Eugene followed proper procedures in enacting the change. The record here indicates that it did.

Affirmed.