Argued July 20, reversed and remanded with
directions October 4, 1971

BRANDT ET AL, *Appellants, v.* MARION COUNTY
ET AL, *Respondents.*

488 P2d 1391

*M. Chapin Milbank,* Salem, argued the cause for appellant. With him on the briefs were Brown, Schlegel & Milbank, Salem, and James D. Fournier, Mt. Angel.

*Albin W. Norblad,* Salem, argued the cause for respondents. With him on the brief was Duane Ertsgaard, Salem.

Before Schwab, Chief J u d g e, and Foley and Thornton, Judges.

FOLEY, J.

This appeal is taken from a judgment of the Marion County Circuit Court which judicially reviewed and then affirmed Marion County Ordinance No. 278, a rezoning ordinance passed by the Marion County Board of Commissioners. The circuit court found that the rezoned area did constitute spot zoning, but sustained the Commission's decision because:

> "* * * the Board of County Commissioners in their hearings had ample evidence from which they could conclude, that the proposed zone change was proper although a deviation from the interim 'holding' ordinance and they supported their findings by proper written orders."

The principal question is whether spot zoning should be treated differently when it occurs during the period of an interim plan as distinguished from a comprehensive plan.

The land in question was zoned for three years under an interim plan, Ordinance No. 176, adopted by Marion County on July 31, 1968. This 15 acre tract was rezoned by the Marion County Commissioners from RA-suburban into two tracts, one C-2 business zone and one into M-1 light industrial. The rezoning ordinance was approved against the recommendation of the Land Use Committee and the Marion County Planning Commission which studied the proposed change and recommended to the commissioners that they not grant it.

Defendant McColly brothers and their wives, owners of the tract, requested the zoning change to allow construction of an auto dismantling yard[1] which

---

[1] Referred to as a "junk yard" by plaintiffs and as an "auto dismantling yard" by defendants.

was not permitted under the existing land use. Plaintiffs are landowners in the near vicinity of the rezoned tract and sought judicial review of Marion County Ordinance No. 278 as well as injunctive relief.

The circuit court determined that Ordinance No. 278 did result in spot zoning. At least since *Page et ux v. City of Portland et al,* 178 Or 632, 165 P2d 280 (1946), spot zoning has generally been found invalid. In *Perkins v. Marion County,* 252 Or 313, 448 P2d 374 (1969), it was stated that *Page* meant:

> "* * * [A]s a general rule 'spot zoning' is invalid, but the decision in each case depends upon its particular facts." 252 Or at 320.

The circuit court found that the spot zoning in the case at bar was not invalid because the area in question had changed sufficiently to justify rezoning.

■ There is a presumption of legislative regularity which applies to the functions of the Board of Commissioners. *Archdiocese of Port. v. Co. of Wash.,* 254 Or 77, 458 P2d 682 (1969); *Rust v. City of Eugene,* 3 Or App 386, 474 P2d 374 (1970). In *Rust,* quoting from *Archdiocese of Port. v. Co. of Wash.,* supra, we said:

> " '* * * [T]he only function of this court and the trial court in reviewing the action of the Board of County Commissioners is to decide whether the Board acted arbitrarily or capriciously. It is not our function to weigh the evidence for the purpose of determining whether in our judgment the Board correctly decided that the use sought would result in a detriment to the community as a whole. * * *' " 3 Or App 389-90.

The circuit court found that the effect of the Board of Commissioner's engaging in spot zoning was to

overcome this presumption of legislative regularity and cited *Smith v. County of Washington,* 241 Or 380, 406 P2d 545 (1965). In *Smith* it was stated:

"* * * [C]ourts generally view spot zoning as being outside the presumption of legislative regularity, and require substantial evidence of change in the neighborhood in order to justify the rezoning of a small tract as an amendment in keeping with the comprehensive plan." 241 Or at 384.

The presumption of regularity having been overcome, the circuit court noted that the burden of showing a justification for the spot zoning shifted to the Board of Commissioners. *Roseta v. County of Washington,* 254 Or 161, 458 P2d 405 (1969).

Having used the arguments and cases which were cited, the circuit court could have found the spot zoning here required a showing of changed conditions by the Board of Commissioners. Instead, in one paragraph the circuit court ruled out *Smith, Roseta* and *Perkins:*

"It is the opinion of the Court, therefore, that because the authorities previously cited are in connection with a proposed zone change after the enactment of a final zoning ordinance, which is the result of the careful procedures outlined in ORS 215, and are not applicable to an interim zoning plan, and, therefore are not controlling. * * *"

Then the court used *Archdiocese of Port. v. Co. of Wash.,* supra, and *Rust v. City of Eugene,* supra, to allow review only if the Board acted "arbitrarily or capriciously."

In other words, the circuit court drew a clear distinction between the effect of spot zoning involving a comprehensive plan and spot zoning involving an interim plan. In the former situation, spot zoning re-

sulted in the Board's having to affirmatively justify its decision and, in the latter case, the court felt that review was justified only if the rezoning was arbitrary or capricious. The court then concluded that the Board had not acted arbitrarily and sustained the zone change.

This reliance on *Archdiocese* and *Rust* because of the zone change occurring during an interim ordinance as distinguished from a comprehensive plan is unwarranted.

■ The general rule is that interim zoning is intended and designed to prevent zoning changes until a comprehensive plan is adopted, even though in certain circumstances it may not prevent a municipality's right to rezone. 30 ALR3d 1202, 1231 (1970). As was stated in 14 W Res L Rev 135, 137 (1962):

> " 'Stopgap' or 'interim' ordinances and resolutions are adopted with the intention of preserving the *status quo* until plans are completed and a subsequent ordinance can be enacted."[2]

Ordinance No. 278 as an interim zoning plan must be distinguished from a "stopgap" ordinance which is intended to have a retroactive application or is quickly and improperly enacted so as to affect a specific party or request. The restrictions of the three-year Marion County ordinance are prospective and thus are not "stopgap."

Yokley, an authority on zoning, suggests:

> "The greater weight of authority, in the judgment of the writer, sustains the right of the mu-

---

[2] *See also*, Comments, 18 Syr L Rev 837 (1967), "Stop-gap And Interim Legislation, A Device To Maintain The Status Quo Of An Area Pending The Adoption Of A Comprehensive Zoning Ordinance or Amendment Thereto."

nicipality to enact an interim ordinance in those cities which have the proper constitutional or statutory authorization * * *." 1 Yokley, Zoning Law and Practice 296, § 6-6 (3d ed 1965),

and

"* * * They are frequently enacted in an effort to preserve a so-called 'status quo' of property pending the enactment of a comprehensive zoning ordinance. * * *" 1 Yokley, Zoning Law and Practice 127, § 3-4 (3d ed 1965).

The optimal time to make zoning changes is at the end of the interim plan, just prior to adoption of the final comprehensive plan.

As noted, it is possible to rezone during an interim plan, but if this constitutes spot zoning, as here, it should be reviewed under *Smith* and *Perkins* (spot zoning is generally invalid unless there has been a substantial change) rather than *Archdiocese* and *Rust* (review only to determine if the Board acted arbitrarily or capriciously).

■ The evidence in this case shows clearly that this was a case of invalid spot zoning. Some of the factors which indicate that this is so are the following:

ORS 215.104 sets the requirements for interim zoning. Subsection (1) states at its conclusion: the interim plan shall have the effect of

"* * * prohibiting for not more than three years any construction, reconstruction, alteration, use or transfer that is reasonably expected to conflict with the proposed ordinance."

■ Public hearings were held and due consideration was given prior to adoption of this interim plan. To change it before adoption of the comprehensive plan, it was necessary that the evidence before the Board

show, as per this statute, that the rezoning also was a result of in-depth study and would not conflict with the final plan.[9] Yet, it is clearly shown in the transcript that the only reuse considered for this land was as an auto dismantling yard. As the plaintiff suggests, this appears to be an attempt to use a single industry as the basis for a multi-industry zone change.

The land could be put to numerous uses in addition to or instead of the auto yard, e.g., a drive-in restaurant, a nursery, a brewery and many others, yet the commissioners only considered the auto dismantling use. In justifying this spot change, they should have taken into account all the potential uses permitted by this rezoning. That they did not, points to the conclusion that special consideration was given to the McCollys rather than to the area.

This is also demonstrated by an important document in the record. The defendants operated an auto yard prior to this rezoning change. Road construction forced them to abandon their previous location and the Marion County Board wrote a letter which states in part:

> "* * * [T]he Marion County Board of Commissioners will cooperate in every way in seeking an alternate location for McColley Auto Wreckers and will work with the property owners in securing the necessary zone changes * * *."

Moreover, the road development which gave rise to this letter has stopped at the McColly's old place of business. According to the testimony of John A. An-

---

[9] *See also,* Smith v. Skagit County, 75 Wash2d 715, 453 P2d 832 (1969).

derson, Marion County Director of Public Works, the reason the road has not been completed is:

"Because we cannot get the movement of— get the property moved to a new location so we can have use of this roadway."

This further implies that the Commission was inclined to at least give special consideration to the defendants because of the desire to get the road opened.

As part of its decision, the circuit court found "that there has been evidence of a substantial change in the affected neighborhood." The defendants made the following arguments to evidence a sufficient change of conditions to justify the granting of a zoning change. Defendants state in their brief:

"This area is served by a railroad running along the west side of Highway 214 and is growing in commercial use. To the immediate north is the Abiqua Rock Products, a gravel plant; to the west the Stayton Canning Company waste disposal area; to the southeast the Webb Industrial Park containing Redmond Industries; and to the south are a proposed garage, Stayton Canning Company, a mink feed processing plant and a used car lot."

■ Yet the testimony reveals that the Abiqua plant had run out of gravel, the used car lot was in fact a barn from which autos were sold, and the cannery operated only 17 days in 1969. More important, all of these uses *existed* at the time of the commencement of the interim plan and are therefore not evidence of changed conditions.

The parallel between this case and *Smith v. County of Washington*, 241 Or 380, 406 P2d 545 (1965), is unmistakeable. In *Smith* it was found:

"The Board of County Commissioners gave, as

one of its reasons for granting a request to rezone the 4.3 acres, the existence of four nonconforming uses in the neighborhood. Since the nonconforming uses were in existence prior to 1959 * * * it is obvious that these uses constitute no 'change' in the neighborhood * * *." 241 Or at 384-85,

and further:

"In *Page et ux v. City of Portland et al*, [178 Or 632, 165 P2d 280 (1946)] we said that if residential districts could be invaded by islands of business merely on account of increased automobile traffic, there would be no certainty or stability to zoning. * * *" 241 Or at 386.

Webb Industrial Park is mentioned by both the defendants and the circuit court as being further evidence of the changed circumstances of the area. In fact, this lot, which is a bit larger than 80 acres, was annexed by the city of Silverton. Prior to annexation, the land use would have allowed an auto dismantling operation. However, the land was rezoned into an industrial park which would not permit its use for an auto dismantling business. This not only is important in showing the lack of changed conditions but also is relevant in connection with two other arguments which the defendants made: namely, that there was no other possible land available for use, as to which there is contradictory evidence in the record, and that the operation would be esthetically agreeable and totally free of noise, smoke and the like, an unenforceable prediction.

Since this was spot zoning, we hold, as did the circuit court, that the burden of showing a justification for the spot zoning shifted to the Board of County Commissioners. We also hold, contrary to the circuit court's holding, that there was insufficient evidence

of change to justify the rezoning here. *Smith v. County of Washington,* supra.

Reversed and remanded with directions to enter a decree for plaintiffs.