# Richmond

Board of Supervisors of Fairfax County, et al. v. M. S. Horne,
et al.

June 13, 1975.

Record No. 740916.

Present, I'Anson, C.J., Harrison, Cochran, Harman, Poff and Compton, JJ.

*William E. Donnelly, III, Assistant County Attorney; Robert H.
Freilich [Mo.]* (*Frederic Lee Ruck, County Attorney*, on brief), for
appellants.

*John T. Hazel, Jr.; Donald C. Stevens; Marc E. Bettius* (*Francis A.
McDermott; Randolph W. Church, Jr.; Russell S. Rosenberger, Jr.;
Hazel, Beckhorn & Hanes; McCandlish, Lillard, Church & Best;
Bettius & Langen*, on briefs), for appellees.

Cochran, J., delivered the opinion of the court.

In this appeal we consider the validity of county ordinances prohibiting for a specified period of time the filing of applications for approval of site plans and preliminary subdivision plats.

On January 7, 1974, the Board of Supervisors of Fairfax County, pursuant to a resolution stating that "emergency conditions" existed within the county because of "unprecedented and rapid growth," adopted an Interim Development Ordinance (IDO), on an emergency basis, by amending the County Zoning Ordinance to include the following:

"§ 30-19 Interim Development Ordinance

"30-19.1 This Article shall be in full force and effect from the date of its enactment until June 30, 1975, the date established for the adoption of the complete official zoning map of the entire county.

"30-19.2 During the period while this Article is in full force and effect for all real property in Fairfax County:

"(A) No application shall be accepted for, nor any approval granted for, a special permit, a special exception, a site plan under the Fairfax County Zoning Ordinance of 1959 as amended and revised, or a preliminary subdivision plat, except as provided in Section (C) of this Article.

"(B) Nothing contained in this Article shall be deemed to abrogate or annul any prior approval lawfully issued and in effect as of the date of enactment of this Article. . . .

"(C)  * * *

2. No proposal for a public facility shall be subject to the provisions of Section (A) above.

"(D) No application for an amendment to the Zoning Ordinance of 1959 as amended and revised on the date of adoption of this Article shall be accepted or considered by the Planning Commission or the Board of Supervisors during the period while this Article is in effect."

The emergency ordinance was adopted without compliance with the statutory requirements for the enactment of either zoning ordinances or subdivision ordinances.

The purpose of the Ordinance was stated therein as follows:

" . . . to protect the comprehensive plan and the new Zoning Ordinance and Official Zoning Map thereof and to insure their implemention by hereby adopting, pursuant to the authority vested in the Board of Supervisors, reasonable interim legislation for a reasonable time during consideration of the aforesaid proposed comprehensive plan, zoning ordinance and official zoning map thereof, to protect the public interest and welfare and prevent a race of diligence between property owners and the County during consideration of the proposed comprehensive plan, zoning ordinance and official zoning map thereof, which would in many instances result in the establishment of a pattern of land use and development which would be inconsistent with the comprehensive plan and violate its basic intent and purpose and fail to protect the community and its general welfare."

After complying with all statutory requirements for the enactment of a zoning ordinance the Board reenacted the IDO on March 4, 1974, the reenacted ordinance differing in no material respect from the emergency ordinance and confirming the effective period of the moratorium from January 7, 1974, through June 30, 1975.

After January 7, 1974, the appellees (Landowners) sought to develop their lands in accordance with existing zoning classifications. They submitted either site plans or preliminary subdivision plats which were rejected by the appropriate county official solely because of the IDO moratorium. The Landowners then initiated in the trial court against the Board and designated county officials (collectively, the Board) separate proceedings, subsequently consolidated, to have the ordinances declared invalid.

During the pendency of the litigation the Board amended IDO on June 24, 1974, to include the following provision:

"All areas of the County which are not specifically designated as critical to the current comprehensive replanning of the County, based on planning and environmental criteria, shall be exempted from the restrictions of Section (A) of this Article upon formal adoption of a land release map or maps, and criteria."

The Board also adopted a land release map, effective July 1, 1974, which showed the areas of the county that were released, or could be released, from the IDO restrictions.

In the trial court the Landowners not only challenged the Board's authority to enact the IDO, but also adduced evidence for the purpose of showing that, even if such an ordinance could legally be enacted, there was no factual justification for the legislation. The Board introduced evidence of its approval of a Planned Land Use System under which, among other things, a comprehensive plan and a comprehensive new zoning ordinance would be recommended, and evidence of the Board's concern that uses not conforming with the projected zoning classifications might become vested pending the preparation, consideration and enactment of the new legislation.

The uncontradicted evidence showed that at least 70 site plans and preliminary subdivision plats filed on or before January 7, 1974, were processed after that date; that 45 submitted after that date were rejected because of the IDO; and that 107 submitted after that date were accepted because of certain administrative guidelines adopted by the County staff from time to time to eliminate inequities. The evidence also showed that the possibility of enactment of the IDO became publicly known on February 5, 1973, upon approval of the Planned Land Use System, and that there was no significant increase in the filing of site plans and preliminary subdivision plats between that date and January 7, 1974, the effective date of the IDO. There was no evidence that the proposed new zoning ordinance would affect the Landowners or that any of them had submitted plans or plats in order to evade the provisions of the proposed new ordinance.

The trial court heard the evidence *ore tenus* over a period of five days, beginning July 10, 1974. Near the close of the trial the trial court refused to permit the Board to raise as a defense, for the first time, the Landowners' failure to exhaust their administrative remedies, and the Board assigned no error to this ruling.

The trial court, by memorandum opinion filed August 12, 1974, concluded that the presumption of validity which attached to the emergency ordinance was rebutted by the evidence and that passage of that ordinance was arbitrary and capricious; that the Board had no express or implied authority to enact either the emergency ordinance or the March 4, 1974, ordinance, and the evidence did not disclose a necessity therefor; and that the legislation failed to comply with the uniformity requirement of zoning under Code § 15.1-488 (Repl. Vol. 1973).[1] The Board appeals the final decree entered

---

[1] Code § 15.1-488 provides:
"All such [zoning] regulations shall be uniform for each class or kind of buildings

August 16, 1974, in which the trial court, after ruling that the emergency ordinance was null and void and that the regularly enacted ordinance was "void insofar as it purports to prevent the acceptance and approval of preliminary subdivision plats and site plans," ordered the Board to "accept for filing preliminary plats of subdivision, final plats of subdivision and final site plans, and to process the same in a prompt manner. . . ."

The Board argues that enactment of the IDO was authorized either as a valid exercise of its police power or by express grant or necessary implication of the enabling statutes.

■ In Virginia the powers of boards of supervisors are fixed by statute and are limited to those conferred expressly or by necessary implication. *Gordon* v. *Fairfax County*, 207 Va. 827, 832, 153 S.E.2d 270, 274 (1967); *Johnson* v. *Goochland County*, 206 Va. 235, 237, 142 S.E.2d 501, 502 (1965). This rule is a corollary to Dillon's Rule that municipal corporations have only those powers expressly granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable. *City of Richmond* v. *County Board*, 199 Va. 679, 684-85, 101 S.E.2d 641, 644-45 (1958).

The Commission on Constitutional Revision recommended inclusion of a provision to reverse Dillon's Rule as to cities and certain counties in order to relax the constraints on local government. Report of the Commission on Constitutional Revision (1969), at 228-231. This recommendation, however, was rejected by the General Assembly, and was not incorporated in the revised Constitution which became effective July 1, 1971. We must conclude, therefore, that, regardless of its fate in other jurisdictions, Dillon's Rule remains in effect in this state. Accordingly, the Board could not enact the IDO under its general police power.

We have long upheld, as a valid exercise of delegated police power, local zoning regulations enacted under state enabling legislation. *See West Brothers Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S.E. 881 (1937). We have acknowledged the presumption of validity that attaches to zoning ordinances, as legislative enactments of the local governing body, *Board of Supervisors* v. *Carper*, 200 Va. 653, 660, 107 S.E.2d 390, 395 (1959), a presumption, however, which we have held to be rebuttable. *Bd. of Supervisors of Fairfax Co.* v. *Allman*, 215 Va. 434, 211 S.E.2d 48 (1975); *Fairfax County* v. *Snell Corp.*, 214

and uses throughout each district, but the regulations in one district may differ from those in other districts."

Va. 655, 202 S.E.2d 889 (1974). But in the present case we are considering an ordinance which, though designated and adopted as a zoning ordinance, is, at least as to the parts in issue, a subdivision ordinance. It does not purport to change zoning classifications. It has certain characteristics of a zoning ordinance in that it proscribes for the specified period applications for rezoning, special building permits and, in the emergency ordinance, special exceptions to the zoning ordinance. We will assume, without deciding, that those provisions, which are not in issue, were validly enacted. We are concerned only with the provisions that prohibit the filing of subdivision plats and site plans.

■ The General Assembly has enacted detailed enabling legislation, codified under Title 15.1 "Counties, Cities and Towns" as Chapter 11, entitled "Planning, Subdivision of Land and Zoning." Code §§ 15.1-427 et seq. (Repl. Vol. 1973). Various provisions authorize the appointment of local planning commissions, § 15.1-427, and prescribe the duties of such commissions. § 15.1-444. Under § 15.1-446 et seq., the local planning commission is required to prepare and recommend a comprehensive plan for the development of the area, and procedures are specified for having the plan put into effect. The commission is empowered, but not required, by § 15.1-458 et seq. to have made, for approval by the governing body, an official map showing existing and proposed public streets, waterways and public areas. Section 15.1-464 provides for preparation by the commission of five year capital outlay programs for the political subdivision based on the comprehensive plan. Article 7 (§§ 15.1-465-485) sets forth with great specificity the powers and duties of local governing bodies to provide for the subdivision and development of land.[2]

---

[2] For example, Code § 15.1-475 provides in pertinent part:

"If a local commission or other agent fails to approve or disapprove the proposed plat within sixty days after it has been officially submitted for approval the subdivider, after ten days' written notice to the commission, or agent, may petition the circuit or corporation court of the county or municipality in which the land involved, or the major part thereof, is located, to decide whether the plat should or should not be approved. The court shall hear the matter and make and enter such order with respect thereto as it deems proper.

"If a local commission or other agent disapproves a plat and the subdivider contends that such disapproval was not properly based on the ordinance applicable thereto, or was arbitrary or capricious, he may appeal to the circuit or corporation court having jurisdiction of such land and the court shall hear and determine the case as soon as may be.

"Nothing in this article shall be deemed to prohibit the local governing body from providing in its ordinance for the submission of preliminary subdivision plats

Article 8 (§§ 15.1-486-498) prescribes with like specificity the purpose,[3] permitted provisions,[4] and procedures for adoption and revision of local zoning ordinances, requiring submission to the planning commission and public hearings before final approval by the governing body.

We have made a significant distinction between local regulations governing subdivisions, enacted pursuant to the enabling provisions of Article 7, and those governing zoning, enacted pursuant to the provisions of Article 8. We have held that approval of a site plan and issuance of a building permit are ministerial, rather than discretionary, acts, the performance of which may be enforced by mandamus when an applicant has complied with or is ready, willing and able to comply with the local requirements. *Planning Commission* v. *Berman*, 211 Va. 774, 777, 180 S.E.2d 670, 672 (1971). On the contrary, local zoning ordinances are legislative acts which, so long as their reasonableness is fairly debatable, will not be invalidated by us. *Board of Supervisors* v. *Carper, supra.*

▉ The enabling subdivision legislation requires prompt action on subdivision plats and site plans by local officials. Although § 15.1-475

---

for tentative approval under such rules of preparation and procedure as may be set forth in said ordinance."

[3] Code § 15.1-489 provides:

"Zoning ordinances shall be for the general purpose of promoting the health, safety or general welfare of the public and of further accomplishing the objectives of § 15.1-427...."

Code § 15.1-427 provides:

"This chapter is intended to encourage local governments to improve public health, safety, convenience or welfare and to plan for the future development of communities to the end that transportation systems be carefully planned; that new community centers be developed with adequate highway, utility, health, educational, and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas be provided with healthy surroundings for family life; and that growth of the community be consonant with the efficient and economical use of public funds."

[4] Code § 15.1-491 provides:

"A zoning ordinance may include, among other things, reasonable regulations and provisions as to any or all of the following matters:

\* \* \*

"(b) For the temporary application of the ordinance to any property coming into the territorial jurisdiction of the governing body by annexation or otherwise, subsequent to the adoption of the zoning ordinance, and pending the orderly amendment of the ordinance.

\* \* \*

"(h) For the submission and approval of a plan of development prior to the issuance of building permits to assure compliance with regulations contained in such zoning ordinance."

\* \* \*

authorizes local governing bodies to provide for submission of preliminary plats for tentative approval under appropriate "rules of preparation and procedure," there is no statutory authority for the enactment of an interim development ordinance which suspends the submission of plats and site plans for a specified period of time. Section 15.1-466 enumerates various permissible provisions that, "among other things," may be included in local subdivision ordinances. In *Nat. Realty Corp.* v. *Virginia Beach,* 209 Va. 172, 163 S.E.2d 154 (1968), in construing § 15.1-466, we held that the municipality could not impose a fee for examination and approval of final subdivision plats in the absence of express statutory authority therefor. Such authority was thereafter expressly granted by amendment to the statute. Acts 1970, c. 436 at 653-54.

The enabling zoning legislation enumerates in § 15.1-491 various permissible provisions that may be included in local zoning ordinances. We deem it significant that this statute which, in paragraph (b) expressly permits the temporary application of a local zoning ordinance to newly annexed lands, and in paragraph (h) authorizes the requirement of site plan approval, makes no provision for temporarily suspending, under exigent circumstances, the filing of site plans.

Citing various scholarly dissertations on the subject, the Board has suggested various reasons to justify implied authorization for localities to enact interim development ordinances. *E.g.,* Freilich, *Interim Development Controls: Essential Tools for Implementing Flexible Planning and Zoning,* 49 J. Urban L. 65 (1971); Comment, *Stopgap and Interim Legislation, a Device to Maintain the Status Quo of an Area Pending the Adoption of a Comprehensive Ordinance or Amendment Thereto,* 18 Syracuse L. Rev. 837 (1967); Note, *Stopgap Measures to Preserve the Status Quo Pending Comprehensive Zoning or Urban Redevelopment Legislation,* 14 W. Res. L. Rev. 135 (1962). However, the General Assembly of Virginia has undertaken to achieve in the enabling legislation a delicate balance between the individual property rights of its citizens and the health, safety and general welfare of the public as promoted by reasonable restrictions on those property rights. We believe that it is peculiarly a function of the General Assembly to determine, subject to constitutional restraints, what revisions in the statutes may be required to maintain the appropriate balance between these important but frequently conflicting interests.

A review of cases from other jurisdictions reveals that courts have reached different conclusions, depending upon their construction of

the local police power, as to the implied authority of a local governing body to enact interim development ordinances or similar legislation. *See* Annot., 30 A.L.R.3d 1196 (1970).

In *Phillips Petroleum Company* v. *City of Park Ridge*, 16 Ill. App.2d 555, 149 N.E.2d 344 (1958), the court held that, as there was no provision therefor in the enabling statutes, the city council could not by ordinance or resolution suspend a valid zoning ordinance. To the same effect are *Downey* v. *Sioux City*, 208 Iowa 1273, 227 N.W. 125 (1929), and *Alexander* v. *City of Minneapolis*, 267 Minn. 155, 125 N.W.2d 583 (1963).

The Board has cited numerous cases in support of its contention that it had necessarily implied authority to enact the IDO. Most of the cases on which the Board relies are distinguishable from the present case. In four of the cases, the local governing body had express statutory authorization or a broad constitutional grant of power, both lacking in Virginia, to enact interim development controls.[5] In four other cases, the ordinance under consideration involved interim or temporary rezoning which did not have the effect of a development "freeze."[6] In three of the cited cases, the interim ordinance was utilized in the context of newly annexed territory.[7] Another involved an emergency ordinance which restricted the power of the board of zoning adjustment to grant a variance.[8] In three cases, the interim development ordinances were struck down because of the governing bodies' failure to observe statutorily prescribed procedures in enacting them.[9] Another was decided without adjudicating the validity of the "interim" ordinances.[10] In another the court held that a county may

---

[5] *Miller* v. *Board of Public Works*, 195 Cal. 477, 234 P. 381, 38 A.L.R. 1479 (1925), *appeal dismissed*, 273 U.S. 781 (1926); *Brandt* v. *Marion County*, 6 Or. App. 617, 488 P.2d 1391 (1971); *Town of Mendon* v. *Ezzo*, 129 Vt. 351, 278 A.2d 726 (1971); *Walworth Co.* v. *City of Elkhorn*, 27 Wis.2d 30, 133 N.W.2d 257 (1965).

[6] *Town of Lebanon* v. *Woods*, 153 Conn. 182, 215 A.2d 112 (1965); *Fowler* v. *Obier*, 224 Ky. 742, 7 S.W.2d 219 (1928); *Monmouth Lumber Co.* v. *Ocean Tp.*, 9 N.J. 64, 87 A.2d 9 (1952); *McCurley* v. *City of El Reno*, 138 Okla. 92, 280 P. 467 (1929).

[7] *Dahman* v. *City of Ballwin*, 483 S.W.2d 605 (Mo. App. 1972); *Appolo Development, Inc.* v. *City of Garland*, 476 S.W.2d 365 (Tex. Cir. App. 1972); *City of Dallas* v. *Meserole*, 155 S.W.2d 1019 (Tex. Cir. App. 1941).

[8] *State* v. *City of Columbus*, 175 Ohio St. 337, 194 N.E.2d 859 (1963).

[9] *City of Miami Beach* v. *State*, 108 So.2d 614 (Fla. App. 1959); *Krajenke Buick Sales* v. *Kopkowski*, 322 Mich. 250, 33 N.W.2d 781 (1948); *State* v. *De France*, 89 Ohio App. 334, 101 N.E. 782 (1950).

[10] *Ross* v. *Montgomery County*, 252 Md. 497, 250 A.2d 635 (1969).

adopt a zoning ordinance without first adopting a master plan and may thereafter deny a rezoning application filed by a landowner.[11]

Two cases did involve ordinances which prohibited the issuance of building permits. In *Willdel Realty, Inc. v. New Castle County*, 270 A.2d 174 (Del. Ch. 1970), the council suspended the issuance of building permits for a period of ninety days for land as to which a rezoning ordinance was pending. Although the court's holding as to the validity of that ordinance is unclear, it did indicate "doubt that [it] could be validly applied to [the] plaintiffs." *Id.* at 177. In *Cappture Realty Corp. v. Board of Adjustment*, 126 N.J. Super. 200, 313 A.2d 624 (1973), the issue was whether a municipality could temporarily delay construction in a flood plain pending completion of flood control projects.

In *Downham v. City Council of Alexandria*, 58 F.2d 784 (E.D. Va. 1932), the only cited case arising in Virginia, the interim ordinance involved did not prohibit construction. It merely provided that applications for building permits had to be referred to the zoning and planning commission for consideration and recommendation to the city council. The landowner, who attempted to enjoin enforcement of the ordinance as applied to his property, as a denial of due process, failed to apply for a permit, and thus failed to exhaust his administrative remedies.

We conclude that there was no express or implied authority for the enactment by the Board of ordinances imposing a moratorium on the filing of site plans and preliminary subdivision plats, and to that extent, the ordinances adopted on January 7, 1974, and March 4, 1974, are invalid. Accordingly, the final decree entered by the trial court on August 16, 1974, is

*Affirmed.*

---

[11] *Gayland v. Salt Lake City*, 11 Utah 2d 307, 358 P.2d 633 (1961).