## CIRCUIT COURT OF CHESTERFIELD COUNTY

Commonwealth of Virginia

v.

Lawless

June 15, 1994

Case No. CR94-267

By Judge William R. Shelton

Currently pending before the Court is the defendant's motion to dismiss. After reviewing the oral argument and briefs of counsel, the Court finds as follows.

The defendant raises four arguments for dismissal in his brief. The Statute of Limitations argument and the Double Jeopardy argument are both contingent upon the success of his Day-to-Day Violations argument. Therefore, they will be considered after the Day-to-Day Violations argument. Last, the Court will address the defendant's Non-Conforming Use argument.

### I. *Day-to-Day Violations*

The gravamen of the defendant's argument is that the County does not possess the authority, either express or implied, to enact and enforce criminal penalties on a separate offense basis for continued violations of the county's zoning code. This argument arises by virtue of the Commonwealth's status as a Dillon's Rule state. In *Donable v. Town of Harrisonburg*, 104 Va. 533, 535 (1905), the Supreme Court of Virginia approved Section 89 of Dillon on *Municipal Corporations*:

It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incidental to the powers expressly granted; third, those essential to the declared objects

and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied.

The meaning of Dillon's Rule in Virginia was further refined in *Board of Supervisors v. Horne*, 216 Va. 113, 117 (1975), where the Supreme Court stated that "a corollary to Dillon's Rule [is] that municipal corporations have only those powers expressly granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable."

To determine whether the County of Chesterfield has the authority, either express or implied, to enact and enforce criminal penalties on a separate offense basis for continued violations of the County's zoning code, the Court must examine the very enabling legislation that grants the County the authority to regulate zoning. The statute at issue is Virginia Code § 15.1-491 which provides, in pertinent part, that "[a] zoning ordinance may include, among other things, reasonable regulations and provisions . . . [f]or the . . . enforcement of the ordinance . . . [and] the imposition of penalties upon conviction of any violation of the zoning ordinance. Any such violation shall be a misdemeanor punishable by a fine of not less than $10.00 nor more than $1,000.00."

Pursuant to the above enabling statute and its corporate charter, Chesterfield County enacted County Code § 21.1-5(b)(1) as set forth below:

§ 21.1-5 *Enforcement*
  (b) *Penalties for Violation; Right of Entry*
  (1) Any person who violates any of the provisions of this chapter . . . shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than ten dollars ($10.00) and not more than one thousand dollars ($1,000.00). Each day such violation shall continue shall be a separate offense and, upon conviction thereof, shall be fined not less than ten dollars ($10.00) and not more than one thousand dollars ($1,000.00) for each separate day on which [such] violation occurs.

The defendant argues that the County's authority, insofar as it relates to enacting criminal sanctions for continued zoning ordinance violations, is limited to that authority vested with it pursuant to Virginia Code § 15.1-491, the enabling statute. In other words, the defendant's position is that the County is exceeding its authority, express or implied, and therefore

engaging in *ultra vires* by adding the separate offense clause for continued violations. The Commonwealth conversely argues that the enabling statute gives the County discretion to enact "other things" necessarily incidental to the enforcement of a zoning ordinance, i.e., separate offense criminal penalties for continued violations as set forth in County Code § 21.1-5(b)(1). The threshold question before the Court then becomes whether such sanctions are permissible as being necessarily or fairly implied in or incidental to the powers expressly granted to the County for enforcement of its zoning ordinance.

Cogent arguments were put forth by both sides in support of their respective positions. The defendant argues that a separate offense remedy is enacted in Virginia Code § 15.1-491, which provides a civil mechanism for redressing continuing violations. The defendant cites *Granny's Cottage v. Town of Occoquan*, 3 Va. App. 577 (1987), where the Court of Appeals addressed a situation factually analogous to the case at bar. In *Granny's Cottage*, the appellant had been convicted of a misdemeanor for violating the mandates of the Uniform Statewide Building Code (hereinafter "USBC"). Virginia Code § 36-106, at that time, provided that "[a]ny such violation shall be deemed a misdemeanor and any owner . . . convicted of such a violation shall be punished by a fine of not more than $1,000.00." The Town of Occoquan, however, had enacted Town Ordinance § 4-14, which expanded beyond Code § 36-106 the penalties for violations of the USBC. Specifically, § 4-14 provided for separate occurrence penalties:

> *Town Ordinance § 4-14*
> Each day during which erection, alteration, repair, or demolition shall occur in violation of the provisions of this chapter shall constitute a separate offense.

The Court of Appeals, in its analysis, cited Virginia Code § 1-13.17 which precludes a local unit from enacting an ordinance "inconsistent with the Constitution and laws of the United States or of this State." In ultimately holding that the town ordinance was in conflict with state law and therefore void, the Supreme Court further supported their position by citing Virginia Code § 36-98. Virginia Code § 36-98 expressly states that the USBC "shall supersede the building codes and regulations of the counties, municipalities and other political subdivisions and state agencies." Given the mandate of § 36-98, it was only logical that the town ordinance could not successfully enter a field that was legislatively occupied by the USBC.

It would appear that *Granny's Cottage* is dispositive of the case at bar. The Court, however, is persuaded otherwise. Virginia's enabling legislation vests express authority with the County to regulate zoning within its political subdivision as the Board of Supervisors, in the sound exercise of their discretion, find appropriate. The legislature's intent is that zoning be regulated at the local level as evidenced by the express grant of authority set forth in the enabling statute, Virginia Code § 15.1-491. To the contrary, the legislature's intent in formulating the USBC was to "insure a *statewide uniform building* code that would apply and be enforced in the same manner and with equal results in all of the State's political subdivisions." *Granny's Cottage* at 583 (emphasis added). Virginia Code § 15.1-491, the zoning enabling statute, mentions nothing about superseding local regulations. Indeed, it contemplates just the opposite, that zoning will be regulated on the local level.

Having disposed of *Granny's Cottage* as precedent that *stare decisis* would obligate this Court to follow, the Court now addresses the threshold issue before it. Given that Chesterfield County is not acting within the power expressly granted from the enabling statute, is the County acting within the scope of the power necessarily implied therefrom by enacting an ordinance which provides for separate offense criminal sanctions for continued zoning ordinance violations?

The Court answers yes. In *Holden v. Prince William County*, 220 Va. 435, 439 (1979), the Supreme Court of Virginia opined that Code § 15.1-491 "gave . . . county governing bodies considerable leeway in their zoning ordinances . . . ." However, the Court found that any unexpressed authority would have to be necessarily implied. *Id.* at 440. The Supreme Court has even recognized that a "[rebuttable] presumption of validity [ ] attaches to zoning ordinances, as legislative enactments of the local governing body." *Board of Supervisors v. Horne*, 216 Va. 113, 117 (1975).

> Consistent with the necessity to uphold legislative intent, the doctrine of implied powers should never be applied to create power that does not exist or to expand an existing power *beyond its rational limits*. Always the *test in application of the doctrine is reasonableness*, in which concern for *what is necessary to promote the public interest* is a key element.

*Commonwealth v. Arlington County Board*, 217 Va. 558, 577 (1977) (emphasis added).

The Court finds that Chesterfield County has not engaged in *ultra vires* by enacting County Code § 21.1-5(b)(1). The County surely must have a mechanism to put some bite in its bark. That is exactly what they have done by enacting an ordinance which provides for separate offenses in situations of continuing violations. In resolving any doubt as to the existence of the implied power against the County, the Court finds this mechanism both reasonable and necessary to promote the public interest. Zoning, after all, is an exercise of the County's police power whose concern is the health, safety, and welfare of its citizens.

## II. *Statute of Limitations and Double Jeopardy*

With the above conclusion in mind, it is axiomatic that the statute of limitations in question begins to run anew upon each day's continued violation of the County's zoning ordinance. Likewise, the defendant has not been put in double jeopardy because he is being tried for separate offenses.

## III. *Non-Conforming Use*

The relevant facts are not in dispute. The defendant was granted a conditional-use permit on July 25, 1984. The conditional-use permit set forth the terms under which the defendant could operate his landfill. On March 8, 1989, the Board of Supervisors amended the defendant's conditional use permit, proscribing him from further landfill activities except those associated with closure and restoration. Subsequently, the Board of Supervisors enacted a new zoning scheme. Newly-enacted County Code § 21.1-12 addresses existing conditional-use permits. In essence, the ordinance states that any existing conditional-use as of April 12, 1989, "shall be considered to be a nonconforming use and shall be subject to the applicable nonconforming use provisions." County Code § 21.1-12. The County's nonconforming use provisions are set forth in County Code § 21.1-3 which states that:

> [a]ny lawful use . . . existing on April 12, 1989 . . . may be continued even though such use . . . may not conform with the provisions of this chapter for the district in which it is located. Such use . . . shall be deemed a "nonconforming use."

Having reached the conclusion that the defendant may have a nonconforming use, the Court must make a detailed inquiry as to whether, as of April 12, 1989, the defendant was engaged in a "lawful use." As contemplated by County Code § 21.1-3, "lawful use" would seem to mean a use

occurring while the landowner is in possession of all legally required permits — which the defendant at bar was. Granted, he may have been engaged in unauthorized dumping. He was, however, in possession of the proper permit thereby making his use a lawful use.

On March 8, 1989, the County merely "amended" the defendant's conditional-use permit. See *March 8, 1989, Conditional-Use Permit.* They did not revoke it. The terms of the amended conditional-use permit were that the defendant submit certain plans "[w]ithin thirty (30) days of the Board's action . . . ." See, *March 8, 1989, Conditional-Use Permit.* It is factually uncontested that the defendant never complied with the terms of the March 8, 1989, permit within the prescribed 30 days. Therefore, on April 7, 1989, the defendant's use became unlawful thereby preventing County Code § 21.1-12 and § 21.1-3 from converting his conditional use to a nonconforming use. The defendant currently has no County authorized use other than that for which his property is specifically zoned.

For the aforementioned reasons, the Court will deny the defendant's motion to dismiss.