274

## CIRCUIT COURT OF ARLINGTON COUNTY

Kansas-Lincoln, L.C.

v.

Arlington County Board et al.

December 10, 2004

Case No. (Chancery) 04-326

BY JUDGE JOANNE F. ALPER

This case comes before the Court on Kansas-Lincoln, L.C.'s Amended Bill of Complainant for Declaratory Judgment against the County Board of Arlington and Arlington County ("the County"). Kansas-Lincoln, L.C. ("Kansas-Lincoln") claims that the "Affordable Housing Guidelines for Site Plan Projects" ("Guidelines") and the amendment adding Note 19 to the "General Land Use Plan" ("GLUP Amendment"), both approved by the County Board on April 27, 2004, are invalid and unenforceable. Kansas-Lincoln alleges that the Guidelines and GLUP Amendment establish mandatory contributions for affordable housing in the form of cash or affordable housing units and that this requirement is not authorized by the General Assembly. The County argues that its written guidelines setting forth the "expected" contributions are merely aspirational and that all such

contributions and proffers are voluntary; hence, they do not exceed the County's authority under state law.

Virginia is a "Dillon's Rule" state; therefore, local governing bodies only have powers expressly granted by the state legislature, fairly and necessarily implied powers from the expressly granted powers, and essential and indispensable powers. The Virginia General Assembly has granted localities certain limited rights to adopt ordinances to address issues of affordable housing.

"Affordable Housing" is defined by the General Assembly as housing that is affordable to those with income at or below the median income. Local governments may establish individual definitions of affordable housing and affordable dwelling units and determine appropriate percent of area median income and percent gross income. Va. Code § 15.2-2201. Local governments also have the authority to establish a local housing fund to assist developers to develop/preserve affordable housing. The local government may also provide developers with money from the fund if the developer provides at least 20% of its units for low and moderate income persons for at least ten years. Va. Code § 15.2-735.

Further, the Legislature has given the County the right to adopt an affordable dwelling unit ordinance that allows for optional increases in density to reduce land costs. The statute specifically provides that any project subject to such an ordinance shall not be subject to additional requirements to contribute to a county housing fund. Va. Code § 15.2-2304.

## Procedural History

The Amended Bill of Complaint[1] for Declaratory Judgment contains four counts seeking a ruling from this Court that: (1) the Guidelines and GLUP Amendment are illegal; (2) the Guidelines and GLUP Amendment are not valid components of the Comprehensive Plan; (3) the Guidelines and GLUP Amendment constitute a piecemeal downsizing without following the process required for downsizing; and (4) the Guidelines and GLUP Amendment amount to a taking without just compensation.[2]

---

[1] The original Bill of Complaint was filed on May 25, 2004; the Amended Bill was filed on June 17, 2004.

[2] Although these last three claims were raised in the Amended Bill of Complaint, there was no evidence produced on these issues at trial; they will not be addressed in this opinion.

The County demurred to the Amended Bill of Complaint on two grounds, (1) lack of standing as to The Northern Virginia Apartment Association, Inc., and The Apartment and Office Building Association of Metropolitan Washington as Complainants; and (2) lack of ripeness as to all Complainants. The Court sustained the demurrer as to the standing issue and dismissed the two Associations as Complainants.

With regard to ripeness, the County argued in its demurrer that there was no actual controversy involving antagonistic assertion and denial of right requiring redress and that an actual controversy may never arise since no site plan has yet been submitted by Kansas-Lincoln. The Court overruled the demurrer as to ripeness, finding that Kansas-Lincoln, L.C., had alleged an actual controversy that required redress because they planned to develop the Kansas-Lincoln parcel through the site plan process and the Bill of Complaint alleged that the new guidelines do not deviate from the County's prior application of guidelines except for the amount of the contribution, therefore making evidence of the County's past handling of affordable housing issues in the site plan process relevant evidence for the Court to consider at trial. Thus, the Court overruled the demurrer, finding that the Amended Bill of Complaint presented a justiciable issue for Declaratory Judgment.

The parties presented evidence and argument at trial before the Court on November 17 and 18, 2004.

## Findings of Fact

The County has adopted a General Land Use Plan ("GLUP") as part of its Comprehensive Plan enacted pursuant to Va. Code § 15.2-2223 of the Virginia Code. The GLUP sets forth the County's vision for desired development and growth in the County.

Through its land use regulations, the County has planned for and encouraged the concentration of development within two corridors commonly referred to as the "Metro Corridors." The Rosslyn-Ballston corridor refers to the area roughly coinciding with the Metro orange line from Rosslyn to Glebe Road. The County structured its Comprehensive Plan to allow the highest densities in the Metro corridors.

The County has also adopted "Sector Plans" for specific areas surrounding the Metro stations in the Rosslyn-Ballston Metro corridor. The Sector Plan provides a more detailed development plan for the particular area in order to implement the Comprehensive Plan. The County's Sector Plan for the Virginia Square sector is the plan applicable to Complainant's property which is the subject of this suit.

While the GLUP and Sector Plans set forth the County's vision and desired development, zoning establishes specific permitted uses and restrictions for particular properties. Each zoning classification has permitted, or "by-right" use, which allows a property owner to develop property in accordance with the restrictions and limitations set forth in the classification without further review by the County Board. A "by-right" development receives administrative review by County staff and, if the proposed development meets the zoning classification, approval is granted by the County Board.

The "by-right" uses of the existing zoning classification of parcels within the Rosslyn-Ballston corridor would not allow the development planned for and desired by the County in the GLUP. The GLUP envisions greater development and density than would be allowed "by-right" under the zoning classifications for the property.

Beyond the "by-right" uses, a property owner may seek a more dense development or greater uses of property by seeking approval of a site plan which calls for such a special exception use. In order to develop property in the Rosslyn-Ballston corridor in accordance with the County's goals and desires planned for in the GLUP, a property owner must utilize the site plan process to obtain a special exception.

The basic elements of the site plan process used by the County require rezoning in order to develop according to the GLUP. The rezoning can only be accomplished through this process because the site plan allows significantly higher density and height than the underlying zoning. The special exception site plan process is a lengthy, comprehensive review because of the intensity of development allowed by site plan. The developer in this process has an incentive to rezone in order to obtain increased density; the County gets property in the corridor developed in accordance with the GLUP. Nearly all development within the Rosslyn-Ballston corridor has been by site plan approval. The evidence at trial demonstrates that this site plan process is considered unique to Arlington County.

Since the 1970s, Arlington County has been aware that the availability of affordable housing was decreasing and would be an issue as the Metro corridors developed and housing costs increased. The County developed a variety of programs designed to address the lack of affordable housing in the County and has expended millions of dollars in this effort.

Affordable housing has been a part of the site plan process for over fifteen years, during which time, the County has used guidelines to obtain affordable housing contributions from site plan applicants. In these negotiations, the evidence demonstrates that the developers "agreed" to make

affordable housing contributions based on their understanding that failure to do so would result in delay or denial of their development plans.

Historically, the guidelines utilized a formula whereby contributions were calculated as a percentage of the square footage of the above grade construction costs of a project. Prior to December 2003, the County adopted interim guidelines for affordable housing contributions for commercial and residential site plans that called for a contribution of "the greater of $4,500.00 per residential unit or $4 per square foot of gross floor area" for all site plans filed on or after August 1, 2003. No such contributions are required for approval of "by-right" development.

On April 27, 2004, the Arlington County Board formally adopted affordable housing guidelines for site plan projects for residential and commercial site plan projects within and outside the Metro corridors as identified in the GLUP. The Guidelines provide:

> a. In residential or mixed-use development, a target of 10% of the gross floor area (GFA), exclusive of any bonus, shall be devoted to affordable housing units committed to remain at affordability levels no greater than 60% of the Washington area median family income for terms of no less than 30 years.
> b. In commercial development, a monetary contribution, set by the County Board is expected to be made to create or preserve committed affordable housing at the same affordability levels.

The monetary contribution for commercial development is set at $4.00 per square foot of GFA and the monetary contribution for residential development is set at $4.00 per square foot of GFA or $4,500.00 per unit, whichever is greater. These Guidelines replaced the interim guidelines adopted in December 2003, but were made applicable to site plans filed after August 1, 2003.

The County also amended the GLUP, adding Note 19, stating that, in accordance with the above guidelines, "residential site plan projects within the metro corridors are expected to provide affordable housing equivalent to ten percent (10%) gross floor area of the project."

These Guidelines and the GLUP Amendment and are the specific subject of this litigation. Kansas-Lincoln contends that the County will utilize and impose the new Guidelines in the same manner in which the prior guidelines were imposed and that these Guidelines are a continuation of a long-standing requirement of affordable housing contributions by site plan applicants. Kansas-Lincoln believes that the only difference between the prior guidelines

and the new Guidelines is the amount sought by the County. Arlington County argues that the Guidelines are voluntary, as is the entire site plan process, and no developer is ever required to make a contribution to affordable housing.

Since there have been no site plans through the process since the adoption of the Guidelines in April 2004,[3] Complainant presented evidence regarding how the affordable housing guidelines were applied over the past four and one half years, together with the County's publications regarding the guidelines. Unrebutted evidence adduced at trial demonstrated that, of the fifty site plan applications approved by the County since January 2001, all but six applicants made or committed to make a contribution to the County's affordable housing fund or contributed affordable housing units as part of the approval by the County Board. In each case, the contribution met the then-existing guidelines set by the County.

In the six cases in which a contribution was not made, Martin D. Walsh, who was qualified as an expert in the field of land use in Arlington, represented the applicant in four cases and reviewed the approvals in the other two cases. All six of these site plans were for affordable housing developments themselves and were therefore exempt from the guidelines.

The Arlington law firm of Walsh, Colucci represented the applicants in thirty-four of the projects. In thirty of those projects, contributions were made that met the full amount under the affordable housing guidelines. Martin D. Walsh, Esq., of Walsh, Colucci testified that the contributions in these thirty cases were not voluntary, but were a requirement for site plan approval. William B. Lawson Jr., Esq., represented the applicants in nine of the projects and in each instance, a contribution was made. Mr. Lawson testified that these contributions were not voluntary, but were a requirement for site plan approval.

Various witnesses for the Complainant testified without contradiction that the guidelines for affordable housing contributions were viewed as requirements by site plan applicants. In particular, Mr. Walsh testified about one situation in which an applicant objected to the affordable housing requirement. He stated that the County staff made a recommendation to the Board that the site plan be approved specifically subject to the applicant's acceptance of a condition requiring an affordable housing contribution. County witnesses agreed that, in past site plan negotiations, there was little

---

[3] Susan Ingraham Bell, Director of the Arlington County Department of Community Planning and Housing testified that there has not yet been any County Board action on projects under the 2004 Guidelines.

discussion over either the fact, or the amount, of contributions since the County's expectations were well known to the development community.

The County has used the following language in its own documents to describe the affordable housing Guidelines:[4] "a target of 10% of the gross floor area (GFA), exclusive of any bonus, *shall be devoted* to affordable housing units. . . ." Comp. Exh. 8A (emphasis added); "residential site plan projects within the metro corridors *are expected* to provide affordable housing equivalent to ten percent (10%) of the area of the project." Footnote 19, GULP, Compl. Exh. 8B (emphasis added); "for commercial developments, a monetary contribution, set by the County Board, *is expected* to be made. . . ." Compl. Exh. 8A (emphasis added); "Details on Revised Affordable Housing Guidelines: The following are the major elements in how the new approach would be implemented: Contributions are Voluntary. Actual *amounts* for a project are subject to negotiation. . . . Affordable housing contributions could be higher or lower than the guideline based on the specifics of an overall project." Nov. 26, 2003, memo to the County Board from County Manager, Comp. Exh. 6B (emphasis added).

Kansas-Lincoln owns a parcel of property in Arlington County located between Kansas and Lincoln Streets which it purchased for the purpose of development. The Kansas-Lincoln property is located in the Rosslyn-Ballston corridor of the GLUP. It is within the area addressed by the County in the Virginia Square Sector Plan which represents the County's desired development of the parcel. The Sector Plan contemplates two buildings on the Kansas-Lincoln parcel, a thirteen-story building facing Fairfax Drive and a nine-story building facing Wilson Boulevard.

The zoning classification applicable to the Kansas-Lincoln parcel is C-2, which gives Kansas-Lincoln the right to develop at a density of 1.5 Floor Area Ratio (FAR) with a building no higher than 45 feet. If developed utilizing its current "by-right" development, the property would be underdeveloped and inconsistent with the County's plan for that parcel. In order to develop the parcel in accordance with the GLUP and the Sector Plan, Kansas-Lincoln is required to utilize the site plan process, under which the maximum FAR

---

[4] Complainant introduced a memorandum to the Board regarding the affordable housing Guidelines which contained the following FAQ: "What happens to bonus density under the guidelines? The County response was that bonus density was "negotiable up to 25% after above set-aside or contribution is met." The County Attorney stated in his opening that the document was prepared by a new county employee not familiar with the program; however, no evidence to support that explanation was introduced at trial.

permitted would be 4.0 and possibly 5.0. The Guidelines and GLUP Amendment will apply to a site plan application submitted by Kansas-Lincoln for its parcel. Kansas-Lincoln has not filed any development applications with Arlington County for its property at this time.

Kansas-Lincoln presented unrebutted evidence that the application of the County's affordable housing guidelines in connection with development of the subject property would have an immediate and substantial economic impact on the value of the property. Robert M. Bushkoff, the representative of the Complainant Kansas-Lincoln testified that, under the April 27, 2004, Guidelines requiring 10% of the gross floor area to be affordable units, the loss in revenue from the lost market rate units would be approximately $6,500,000.[5]

## Issues of Law

This case centers upon two issues: whether the affordable housing contributions in the Guidelines and GLUP Amendment are mandatory or voluntary contributions, and if the Guidelines and GLUP Amendment establish mandatory contributions, does such a requirement exceed the County's authority under state law and therefore violate Dillon's Rule.

## Affordable Housing

Under Virginia law, every local government must adopt a comprehensive plan as a general guide to development. The County's comprehensive plan is required to include "the designation of areas and implementation of measures for the construction, rehabilitation, and future needs of residents of all levels of income in the locality while considering the current and future needs of the planning district within which the locality is situated." Va. Code Ann. § 15.2-2223-24 (1950). Thus, the Legislature has said that affordable housing for all income levels must be considered in comprehensive planning. The issue in this case is not whether affordable housing should be part of the County's planning and development process; rather, it is how to address the issue of

---

[5] Evidence was presented that, under the Sector Plan governing the Kansas-Lincoln property, the expected affordable housing contribution would be different than under the April 2004 Guidelines; nevertheless, the evidence showed without contradiction that application of either guideline has a direct and adverse impact on the property rights of the Complainant.

affordable housing in the context of statutory delegation of legislative authority from the Commonwealth to the County.

The Complainants do not dispute the need for affordable housing in Arlington or the fact that the County should address affordable housing issues in its comprehensive plan. This Court and the parties are in agreement that the County should promote affordable housing in the County and develop appropriate policies in order to do so. This ruling does not address the need for, or merits of, affordable housing as a consideration in development of the County; this decision addresses only the narrow issue of the method the County has chosen to address such issues and whether that method exceeds the authority granted to the County by the General Assembly.

In opening statement, the County Attorney suggested that the Court's ruling might affect the County's overall process of development using the site plan process. The Court will not reach the broader question of whether the County's special exception site plan process is authorized by the General Assembly. At issue is only whether, as part of the site plan process, the County can require applicants to make affordable housing contributions either by cash or contributing affordable housing units. The record herein is not developed as to whether other community benefits that the County negotiates during the site plan approval process are authorized. Accordingly, the Court will not address the broader question of the site plan process in this decision.

*Voluntariness*

The Court has found, as a matter of fact, that the evidence is sufficient to demonstrate that the Guidelines adopted in April 2004 will be utilized and implemented in the same manner as the County's previous affordable housing guidelines.[6] County Manager Ron Carlee testified that the County will impose the Guidelines and GLUP Amendment in the same manner as the prior guidelines.

Every site plan application approved by the County since January 2001, other than the six projects that were for affordable housing projects themselves, included an affordable housing contribution at or above the level articulated in the guidelines. This is convincing evidence that the site plan applicants were required by the County to make affordable housing contributions in order for their applications to be approved. Accordingly, the

---

[6] The 2004 Guidelines and GLUP Amendment increased the contribution amount from $4.00 per square foot of gross floor area to 10% of the gross floor area for residential projects.

evidence clearly proves that, although the County states that the Guidelines are "voluntary," in their application and use since at least 2001, they have been mandatory.

As the Court has found that the application of the Guidelines to require a contribution at a level set by the County has been consistent and will follow that same pattern in the future, the Court finds that the Guidelines have the effect of an ordinance imposing a mandatory contribution on site plan applicants. The Court must now determine whether the General Assembly has granted the County authority to require such contributions.

### Dillon's Rule

"Dillon's Rule" provides that local governing bodies have only those powers that the General Assembly provides them, either expressly or by necessary implication. *Board of Supervisors of Fairfax County v. Horne*, 216 Va. 113 (1975); *Arlington County v. White*, 259 Va. 708 (2000). The Virginia Supreme Court has stated that Dillon's Rule is "applicable to determine in the first instance, from express words or by implication, whether a power be found. . . ." *Commonwealth v. County Board of Arlington*, 217 Va. 558, 573 (1977). If the power cannot be found, then the inquiry is at an end. All reasonable doubt over whether legislative authority exists "must be resolved against the local governing body." *City of Richmond v. Confrere Club of Richmond*, 239 Va. 77, 79-80 (1990); *Board of Supervisors of Powhatan County v. Reed's Landing Corp.*, 250 Va. 397, 400 (1995). As this case involves a challenge to the County Board's legislative authority, there is no presumption of legislative correctness. *See Reed's Landing Corp.*, 250 Va. at 399-400.

The General Assembly has conferred certain authority to local governments regarding zoning and land use regulation. "The General Assembly has enacted detailed enabling legislation. . ." regarding zoning and land use. *Horne*, 216 Va. at 118. When the Legislature confers legislative authority to the County Board and specifies the manner in which that authority is to be utilized, the Board may not select any other method. *County Board of Arlington*, 217 Va. at 577.

The General Assembly has not conferred the authority to include a requirement that a developer provide affordable housing as part of the land development process in the zoning and land use regulation. *Board of Supervisors of Fairfax County v. DeGroff*, 214 Va. 235 (1973).

The County claims authority for its affordable housing Guidelines under Va. Code §§ 15.2-2286(3), 15.2-2286(10), and 15.2-2304 of the Code of

Virginia. None of these statutes confers, either expressly or by implication, the authority to *require* an affordable housing contribution as part of the site plan approval process. The Court will examine each of those statues to determine whether they provide authority to the County for its affordable housing Guidelines.

Section 15.2-2286(3) states: "[c]onditions imposed in connection with residential special use permits, wherein the applicant proposes affordable housing, shall be consistent with the objective of providing affordable housing." The County's assertion that, because this statute mentions affordable housing it confers the authority by implication is not persuasive. In determining whether a statute provides or implies legislative authority, the language of the statute must support the contention that the General Assembly "intended that the grant of the express [authority] also would confer the implied." *County Board of Arlington*, 217 Va. at 577. "[W]hen an enabling statute is clear and unambiguous, its intent is determined from the plain meaning of the words used, and, in that event, neither rules of construction nor extrinsic evidence may be employed." *Reed's Landing Corp.*, 250 Va. at 400; *Confrere Club*, 239 Va. at 80.

The Court finds that the reference to affordable housing in Va. Code § 15.2-2286(3) is clear and unambiguous. It refers to those situations where an applicant is seeking a residential special use permit in order to provide affordable housing and provides that conditions imposed on such an application must be consistent with providing affordable housing. It does not expressly authorize the County to include a requirement that affordable housing contributions be made by applicants in the site plan process; it does not give the County authority to use the special exception process to require a property owner to give money to an affordable housing fund or contribute affordable housing units in order to obtain site plan approval; nor does it, either expressly or by implication, provide the County with the general authority to impose contribution requirements to benefit the general public need for affordable housing.

The Virginia Supreme Court has held that the special exemption process should be tailored to impose conditions that address the impact of the specific proposed development and reduce its impact on the neighboring properties and the public to the level that would result from development by right. *Board of Supervisors of Fairfax County v. Southland Corp.*, 224 Va. 514 (1982). The General Assembly's express provision for the method by which Arlington County can provide for affordable housing in its zoning ordinances indicates a determination by the Legislature not to expand the term "special exception" to

allow special exceptions to be approved based on the applicant's providing affordable housing contributions.

Although there was evidence that the County had studied and made determinations regarding the impact of development generally on the County's population and workforce and made determinations regarding the need for affordable housing policies based on those studies, there was no evidence that the issue of any one particular project's impact on affordable housing was studied and considered in the site plan process. Instead, the County created a policy that was applied generally to all applicants, rather than based on the needs and impact of each individual proposed development project. The special exception process should be tailored to impose conditions that address the impact of the specific proposed development and reduce its impact on the neighboring properties and the public to the level that would result from development by right. Section 15.2-2286(3) does not provide authority to the County for its affordable housing Guidelines.

Section 15.2-2286(10) authorizes the County to administer incentive zoning under Va. Code § 15.2-2201. Section 15.2-2201 states that incentive zoning allows the use of bonuses in the form of increased density in return for the developers' providing desired "features or amenities" to the locality. Affordable housing contributions are not "features or amenities" of particular developments. Moreover, § 15.2-2201, which defines incentive zoning, includes a *separate* definition for "Affordable Housing." That definition, and the plain reading of the words "features and amenities," makes it clear that affordable housing is not included as a "feature or amenity desired by the locality." Further, contributions to the affordable housing fund are clearly not "features and amenities" within the subject development being proposed, as required by § 15.2-2201. Therefore, § 15.2-2201 does not provide authority to the County for its affordable housing Guidelines.

Finally, Va. Code § 15.2-2304 authorizes certain counties, including Arlington, to "provide for an affordable housing dwelling unit program" in their zoning ordinances. The authority provided by the statute requires the local program to:

> address housing needs, promote a full range of housing choices, and encourage the construction and continued existence of moderately priced housing by providing for optional increases in density in order to reduce land costs for such moderately priced housing. Any project that is subject to an affordable housing dwelling unit program adopted pursuant to this section shall not be

subject to an additional requirement outside of such program to contribute to a county or city housing fund.

Va. Code Ann. § 15.2-2304. The County's Guidelines and GLUP Amendment, requiring that site plan applicants make affordable housing contributions, is not an affordable housing dwelling program authorized by § 15.2-2304. Arlington County has adopted an affordable housing "bonus density" ordinance pursuant to § 15.2-2304, separate and apart from the contributions required under the Guidelines. *Arlington County Regulation* § 36H5b.

Section 15.2-2304 does not authorize the County to require the contribution of either affordable housing units or cash to an affordable housing fund as part of the site plan approval, but only expressly authorizes an ordinance whereby density is increased "in order to reduce land costs for such moderately priced housing." Because the General Assembly has authorized specific affordable housing ordinances that can be included in its zoning ordinances, the County has no authority to use its zoning ordinances in any other manner in order to implement its affordable housing goals. *White*, 259 Va. at 708-20; *County Board of Arlington*, 276 Va. at 577.

There is no authority for the County Board to require site plan applicants to make affordable housing contributions to the County Housing Reserve Fund or provide affordable housing units as part of the County's site plan approval process. Moreover, the County is not authorized to require site plan applicants who seek to provide affordable housing through the bonus density program to also make a contribution to the affordable housing fund as that requirement is specifically prohibited by Va. Code § 15.2-2304. Since the Court has found that the Guidelines and the GLUP Amendment require such contributions by property owners who seek to develop their land pursuant to the General Land Use Plan and its components, the Court finds that the Guidelines and GLUP Amendment are outside the legislative authority provided to Arlington County by the Virginia General Assembly and are, therefore, illegal and invalid.

*Conclusion*

For the foregoing reasons, the Court holds that Complainant has standing to challenge the County's requirements for affordable housing contributions in connection with site plan approvals; that Complainant purchased the Kansas-Lincoln parcel with the intent to develop it through the site plan process; and that the County will apply the Guidelines during that process.

This Court's declaration of the rights of the parties regarding the legality of the Guidelines and GLUP Amendment will afford the parties relief from uncertainty and insecurity related to the controversy, and, accordingly, the Court finds the Guidelines and GLUP Amendment invalid and illegal, as they are beyond the scope of the County's lawful authority.